The final case for today is Estate of David Maurice, Jr. v. Life Ins. Co. of N. America. May it please the Court, my name is Keiko Kojima. I represent Appellant and Cross Appellee Life Insurance Company, N. America. I'd like to reserve five minutes for rebuttal. This case is about an ERISA claimant, a long-standing diabetic, who submitted a claim for accidental dismemberment benefits based on a left below-the-knee amputation following years of treatment for diabetic foot neuropathy and diabetic foot ulcers. Plaintiffs claim that Mr. Maurice stepped on glass in a hotel swimming pool seven years earlier. We're not here today to discern whether or not Mr. Maurice stepped on glass. Rather, the primary question for this appeal is whether diabetes substantially contributed to the loss. This is essentially a medical truism. Plaintiffs' own expert, Dr. Gelpin, agreed that because Mr. Maurice suffered from uncontrolled diabetes, this led him prone to infections, which led to surgical procedures, foot wounds, and ultimately the loss of his leg. The medical records are also in accord. Mr. Maurice's own treating physicians determined that he needed the procedures because he had the diabetic foot neuropathy and the diabetic foot ulcers. So I take it you're in agreement that the legal principle that we're dealing with is the substantially contributed to the disability concept. You're not questioning that. You're questioning the application factually on this record. Am I correct on that assumption? You're correct. All right. So it comes with a heavy burden here because we have the Elicit District Court decision. There are all of these presumptions. There has to be a clear error, I guess, is the standard that we have to embrace in overturning that. And why do you think that there's clear error here in terms of the application of that standard to the facts of this case? Right. I would lobby for a standard review of de novo because this is a mixed question of fact and law. Almost all the facts, if we assume the glass incident occurred, almost all the facts are undisputed. Whether or not the district court erred in misinterpreting the standard for substantial contribution, making it a higher standard than it needed to be is really a question of law, and that makes it a de novo standard. I thought that everyone agreed that substantial contribution was the right standard, legal standard. Exactly. But if the district court interpreted substantial contribution to have such a high burden for the insurance company to overcome, as opposed to something more than just a mere philosophical cause, then that determination is a legal question for de novo review. I'm not so sure I agree with that. It seems like you're dealing with the application of that standard to the facts of this case. But I may be wrong. But if you think I'm wrong, you can let me know. Our position is that we would prevail under clear error or de novo review. Either way, you would prevail. Either way, we would prevail. Because under clear error, the decision should be overturned if it's illogical, implausible, or not supported by inferences in the record. And here, we have all three. Well, you had the experts testify. It was a little confusing. You could place different spins on them or different inferences. Is this the type of thing that the district court judge was competent to assess? I would say the district court had all the medical records inside the administrative record. The district court also had the reviews of three medical reviewers who basically all agreed with each other that the progression of a disease, if the glass incident occurred, was that the glass incident, because he was an uncontrolled diabetic, he was prone to the infections. He was also suffering from diabetic foot neuropathy and diabetic foot ulcers. And this progression led to him having the amputation. But I think it's one of the main factors of the appeal is that if you look at the district court's factual findings, you'll see and you're looking for words that say diabetes in the entire medical history narrative from both the district court's opinion and also the plaintiff's. They don't discuss diabetes. So why is that absent from the facts? I take it you're not suggesting the district judge wasn't aware that he had diabetes. I think the district court didn't give diabetes the proper weight that it deserves. Because there's no medical record. That's plainly the thrust of your whole argument. The fact that the district court doesn't discuss the diabetes, I'm not sure, is a powerful force toward that end. But then you have to wonder why is it that if the narrative in the factual findings is a glass incident with no discussion of diabetes leading up to the amputation, then it seems from the district court. Because the author of that document knows what the result is going to be. Maybe. The fact, I mean, I'm not trying to deny your main proposition. I just don't think the fact that diabetes isn't extensively discussed in the findings of fact and conclusions of law gets us very far because we know what the conclusion of that document is. I think it's important because if you're looking through the opinion to find out, why didn't the district court find that this was a substantial contribution? What in the opinion, what is there medically? It's pretty evident. I mean, what I get from it is that we got these three experts, two hired by the insurer, one by the claimant. And one of them talks extensively about why it is a substantial contributor. That was Dr. Lowe. And the other two don't use that word. Now, you may agree or disagree with that analysis, but it seems to me that's the thrust of the district court's reasoning. Whether the details of diabetes are discussed in the findings of fact doesn't change that very much. I don't think we need to have a magic word substantial or significant. So let me get to that. Substantial is in the standard. Was there any live testimony before the district court? No, Your Honor. This is an ERISA case. Strictly from administrative record. True, based on the evidence in the record. And the record testimony was not actually testimony. It's not like depositions were taken. As I examined the record, it looks like these are written responses by the medical experts in response to written inquiries put to them. Is that correct? That's correct. These are based on medical records and medical reviews, written opinions. But if we're looking at the substance of the opinions, all three of the doctors say the same thing. Excuse me. The plaintiff's expert as well, in his very detailed 16-page letter, goes through extensively why Mr. Maurice's medical conditions led him to the point where he needed the amputation. And I don't think that we can just look for a singular word to pick it out and say, oh, it's substantial or not substantial. Because Dr. Galpin did not use the word, this is not a substantial cause. He wasn't asked that question. But if the plaintiff's counsel had Dr. Galpin say, this is not a substantial cause, but yet the force of his opinion, the medical facts stated in his opinion, the fact that there are hundreds of pages of medical records and hundreds of references to diabetic, diabetes, diabetic ulcers, diabetic foot neuropathy, throughout the entire medical records, which is basically the administrative record, we're looking at the integrity of the facts and how they stand up to a standard of substantial contribution. If I may speak to the standard, Your Honor. The substantial contribution test, if we're looking to the genesis of it, I think the problem with how the district court viewed the case is that at the time, this was newly adopted from the Dowdy decision that affirmatively adopted the substantial contribution test. And if we're looking for guidance on what can come, what can rise to the level of a substantial contribution, it really isn't that much. The Dowdy court referred to something that needs to be more than a mere philosophical cause or something more than just a cause and a number of causes that lead to the loss. The holding in Dowdy basically found that the automobile accident was the reason basically for the amputation, I think, right? That's correct. And that's what makes Dowdy so stark in contrast to what happened with Mr. Maurice because in Dowdy there was no evidence that diabetes played a role other than being a cause because his ankle was nearly severed. There was a true accident that occurred five months before the actual amputation. And it was already nearly severed because of the accident in Dowdy. That's a lot different than this case, I suspect. Yes. And that's why I think this case provides an opportunity, a teaching moment, to bookend the substantial contribution test. Well, let me focus your attention on what I think is the single most important piece that supported the district court or led the district court to its conclusion, which is in the, I'll just read the part. It's on Excerpts of Record 27 and points out that the insurance company did a follow-up with Dr. Levin. And, quote, in response, Dr. Levin simply opines that Maurice's, quote, was a contributor and did not opine that diabetes was a significant or substantial contributor to the amputation. And if you go to the actual Excerpt of Record 375, you have on 374 the question put in writing, presumably by the insurance company, which uses the word significantly but close enough for our purposes because that's all we have. And what the district court says is, gee, we get this one-paragraph response, which doesn't use the word significantly. Now, if you were in an oral examination, you're a very capable lawyer. I expect you would follow up in a deposition and try to highlight and not let the record sit with an inference to be drawn from the fair, to use the word that was pushed forward by the question. But we have no follow-up question. So why isn't the district court entitled to say, well, gee, he was asked whether it was significant, and his response was it was a contributor without the adjective, adverb. And that's what the district court seems to be saying. Well, that's the fulcrum for me. What's wrong with that? I think that puts undue influence on Dr. Levin's non-opinion. He didn't go out and say that diabetes did not significantly contribute to the loss. The question at hand, and it's kind of, I would admit, an awkward question, is please further expand upon your response to question number two on the original referral. Do the records that claimants left BKA, below-knee amputation, and resulted directly independently in parentheses from accidental injury of all other causes and was not significantly contributed to by sickness, disease, or bodily infirmity? It's a compound question. He addresses the question by explaining exactly why diabetes contributed to the loss, and that the loss was not just independent. It was dependent on the fact that he had diabetes, the infections that led to the amputation. I think if you look at the meat and the substance of his opinion, and the reason for his answer, that speaks to whether or not it significantly contributed to or not. We're not looking for, again, magic words. And I don't think this case should be decided on inferences or absences, because we're looking at the records. I don't think you can. Well, you are actually asking for an inference. You want us to draw the inference that this is enough to make it substantial. It's not just his opinion. It's Dr. Lowe's opinion. She used the words significant or key. She very much did use the word, and the district court acknowledges that. The district court views it as sort of like two against one, without the question having clearly been responded to by the two. Right, but then you're, again, looking at the facts, and honoring the facts to figure out what role did diabetes play. And, again, it's more than just, if we're looking at the continuum of how high the burden needs to be for a substantial contribution, it's really not insurmountable. It's not the California test, which is the most predominant cause, or the most important cause, and that's under California state law. It's basically, it wasn't more than insignificant. If I could just speak very briefly to the genesis of the test. Way back then, you had an insurance policy, an ERISA policy. You would look at the policy and the terms to figure out what the coverage was. And in this instance, you look at the policy, it says it must be directly and indirectly caused due to the injury. But how do we get to a point where a substantial contribution test gets in play? It's because of the reasonable expectations test. The whole point, and remember in Dowdy, that it adopted the Adkins test from the Fourth Circuit. The whole point was to not let the insurer take the terms of the insurance policy so literally, so that a person in almost nearly perfect health would be denied benefits based on the fact that there could be a sickness or a cause that's not a substantial cause and not something that's just insignificant that led to the loss. So the whole point of substantial contribution is just to make sure that the insurance company is not going to take those words literally. But that doesn't mean that the exclusion, the sickness and disease exclusion, should be read out of the policy. That exclusion must mean something. Before all of your time is used, let me pose a question with regard to the attorney's fees issue and in particular the argument that some of the time being claimed for was actually worked by a contract attorney and should be chargeable only at the contract attorney rate. The allegation that it was indeed it was Mr. Petty who was a contract attorney was disputed in the answering brief on the issue, and I haven't seen anything cited from the record to support your client's allegation. Right. What is there to support that allegation? I believe Mr. Petty is a contract attorney. You're right. There's no evidence in the record. But you believe it doesn't really do anything, does it? Is there anything cited to support that allegation? Not in the record. So why do we think about it any further? Let me ask another question. Your firm, I presume, has associates? Yes. Your own law firm? Okay. Do you bill your clients for just the amount of money you pay your associates and not bill them for any hourly rate beyond what you pay them in salary? Right. Do you? I think the answer to that question is almost certainly no. Is that correct? Yes, Your Honor. And so you're asking us, based on an allegation that's unsupported in the record, to reduce the amount of fees in a way that you don't behave yourself, your firm doesn't behave itself. Is that right? I was taking a more broad approach. I think the answer to my question is yes, isn't it? If you want to say more, I'm happy to hear more. But it seems to me that was an irresponsible allegation not supported by the record and a legal position that's untenable. And I'm waiting to hear if you have anything else you want to say on the subject. I'll waive that particular argument, Your Honor. I'll reserve the rest of my time. Thank you. Thank you. Good morning, Your Honors. May it please the Court, my name is Russell Petty and I'm representing the Plaintiff Appellee and Cross-Appellant Stacey Maurice. As I think Judge Block correctly pointed out, one of the key issues here is the standard of review, whether it's clear error or de novo. Let me ask about that. We've got an administrative record. There's no live testimony. Indeed, the administrative record isn't filled with transcripts. But the record we have in front of us is exactly the same record that the district court had. And so the usual reasons for deferring to a district court's factual findings don't seem to apply here, do they? Well, they do, Your Honor. And let me give two independent reasons why the clear error standard applies. Number one, it's the law of this court. And I cite this court to the Doughty case, which everybody here is certainly familiar with. And the Doughty case acknowledged that, and that was an aristic case just like this one, where everything was done on a paper record and there was no live testimony. And the question was exactly the same. Did the diabetes substantially contribute to the need for the amputation? The same question here is there. That case said, and I quote here from page 807, when reviewing a mixed question of law and fact, we review for clear error, if the application of the law to the facts requires an inquiry that is essentially factual. And then it went on and it overturned the district court's decision. It overturned the district court's decision based on the clearly erroneous standard. Although the district court cited the substantial contribution standard, its application of that standard was clear error as it was overly strict and not consistent with the requirement, et cetera, et cetera. And that's over at page 810. Well, I'm well aware of what it says there, and I will tell you that there is discussion in some of our cases with regard to what happens in an administrative record case, but that's not what I want to get to now. You told me there were reasons for adhering to the same standard. What you've told me first, you said there were two. The first is that's what President says, but what logical reason is there when the record is exactly the same record that the district court read? Well, you know, the logical reason, Your Honor, and I know, you know, the record here is extensive. You've got very dense medical records. You've got, you know, three conflicting expert reports. And the district court, as you can see from the court's detailed findings, did a lot of work attempting to resolve those issues. Well, we've got to do the same work. Why is it that we're supposed to? If we reach a conclusion based on our reading of the record that's different, what's the reason for deciding that this other person over there should rule? Well, you know, Your Honor, the reason is. Is there a reason? Yeah. I mean, why have district courts at all, Your Honor? Because usually you have live testimony, and they can observe demeanor of witness and have a better sense of what's going on. We've got a flat administrative record here. What the district court had to draw on is exactly what we're required to draw on. Well, you know, Your Honor, I've got an administrative record in every single ERISA case, and I've done probably over, well, certainly over 100 of them. And I guess we just, you know, changed the rules so that we come here to the Ninth Circuit in the first instance and try and hear everybody. It's sort of that you have two strikes against you, to use a good analogy, the Chicago Cubs and the New York Mets, but you don't have the third strike here is what you're claiming, right? So you look at the facts here. The facts really have to be carefully evaluated. And there are cases when the determination of the district court judge is reversed by the circuit court. Unfortunately, I had one of those situations myself. Let's look at the facts here, though, if I may, and tell me whether I'm wrong. I noted that Maurice's own medical expert in his testimony was kind of equivocal, not so clear what that was all about. But it did explain that diabetes prevented the cuts from healing properly and exacerbated the risk of infection. I also made a note that once the cuts became infected, diabetes made it more difficult to fight the bacterial onslaught, even with the assistance of antibiotics, allowing the infection to reach the bone, and eventually the only way to stop the infection from spreading was amputation. I made notes that this is Maurice's own medical expert who said that. And what did the district court say about all that? Well, you know, here's the point, Your Honor, and my very able opponent stressed the fact that there wasn't a lot of discussion in the judges' findings about diabetes. The fact is everyone acknowledges that diabetes was a contributing factor to the need for the amputation. There's absolutely no dispute about that. Dr. Gallopin said so. Dr. Levin said so. Dr. Lowe said so. Everybody agrees that that's the case. The question is whether it's substantially contributed. And is Judge Clifton at the point that? Who said that it wasn't? Well, I mean, Dr. Levin, Your Honor. Well, if you take the omission of the word significantly in the paragraph that followed the question, I understand that. Did he comment at all specifically? Did he answer the question yes or no? Was it a significant or substantial contributor? I haven't seen anything like that in the record. No, Your Honor, but I mean, the point you were making, though, earlier is exactly correct. I remember the point I was making. It seems to me that's what the district court leaned on. So I'm asking a broader question now. Is there anything else from Dr. Gilpin, from Dr. Lewin elsewhere, Levin elsewhere? We know Dr. Lowe spoke specifically to the subject. So I'm asking about the first two doctors. Did they, did anybody ever say it was not a substantial contributor? Well, Your Honor, what I will say is what Dr. Levin said in his first report, and this is over in the record at 745, the injury that occurred in 2008 would have had a great extent of degree that contributed to the claimant's multiple surgical interventions and health issues. I think that what he is saying there is that the most important factor was the injury that occurred, the accident that occurred back in 2008. People commonly step on glass and cut their feet, and in almost all those cases they don't have part of their leg amputated. And here, you know, all three medical reports say that he had diabetes and that diabetes impedes the body's ability to heal, that prior to this accident they had ulcers on his foot. I mean, isn't it obvious that even if they didn't use the word substantial, that diabetes had to be a substantial cause here of the amputation? Well, I mean, I think that if Dr. Levin had thought that, then he would have said that, either in his initial report or in his follow-on report. Instead, in the initial report, he focused on the injury, didn't use the word, he wasn't asked for the initial report about substantial or significant contribution, but he did focus on the injury and seemed to be indicating that it was the most significant factor. What was the question he was answering? The question he was answering focused on the injury. The question was, please comment on the level of contribution, if any, of traumatic injury on 2008 date or any other actual dental injury to the claimants left BKA on 2015 date. And in the paragraph of response, he says exactly what you said, which is that the injury in 2008 would have a great extent of degree. And then he follows with another sentence that makes specific reference to diabetes, which isn't asked about in the question. So why shouldn't we infer, or why shouldn't the district court have inferred, the fact that he goes on to talk about diabetes when it wasn't even asked about, takes this to be a response that says diabetes is a big part of this, too? Well, you know, Your Honor, I think that you just have to keep coming back to the standard of review. I mean, the district court could have reached other inferences. The district court could have decided to weigh diabetes a little bit more heavily than it did. But the fact of the matter is, is that it made the decision to read Dr. Levin's report as it did, in Dr. Levin's refusal to agree that there was a significant contribution, meaning he didn't believe it was a significant contribution, especially in light of his earlier statement. And I think that the district court's decision in that matter should be respected. It has to be respected under the law unless it's unreasonable. So we should disregard the plaintiff's own expert that specifically detailed the facts that seem to suggest to me that the substantial contribution standard has been met. Look, I'm focused on the facts here. You have doctors who are not skilled in going to Harvard Law School and understanding the nomenclature of the difference between proximate cause, preexisting conditions. There's a lot of this that's bandied about here. Perhaps it's confusing as to what really the proper standard is. I don't think proximate cause is the standard here. That language has been bandied about, contributing languages bandied about. But I'm sort of focused on the actual facts here, which seems to make this case factually the opposite of doubting. Your Honor, Dr. Galpin, it was a very detailed report, and it's really easy to go in to sort of mine it for little snippets that you like and you don't like. But at the end of the day, this is what he had to say in the conclusory section in the record over 2804. It is very clear that there is a straight, direct link beginning with his accident at the hotel, which became the center and focus of an acute and then chronic infection. Isn't that really the standard to you? Let me interrupt you. Isn't that the standard we use in terms of whether we decide whether something was the predominant or proximate cause of an injury? Well, you know, if you read... That's what it sounds like to me. It sounds like that's what he's saying. Yes, you know, and if you read Dowdy, Your Honor, and I argue for the proximate cause standard, and it doesn't sound like my paper is making any sense, Your Honor. You did argue that, but you agree that it's not the standard. There's a dichotomy, conceptual dichotomy, between contributing, substantial contributing factor on the one hand and proximate cause on the other. You seem to really urge that the standard we should apply should be the proximate cause standard, which is what the conclusion seems to suggest to me that you just read. Well, you know, again, the problem is, with respect to all of the experts, is none of them was really asked to directly opine on the actual standard. And because it's an erisic case, you're left with a fixed record. But if you do read the Dowdy case closely, Your Honor, I mean, when they... And, by the way, let me just state for the record that my very able opponent said that Dowdy's introduction of the substantial contribution test was something new and something different. As a matter of fact, that McClure is over... A slip of the tongue. This is clearly proceeding Dowdy. Yeah. Although they made the same argument with respect to the attorney fees, and they don't seem to be able to acknowledge that this is well-established law. And, you know, not wanting to get ahead into the saving clause argument, you know, the insurance company is continually arguing that it needs, you know, an established body of federal law to follow. But yet, you know, McClure is a quarter century old, and they're still not following it. So, but to get back to the court's question, the, you know, Dowdy did sort of speak at great length as to what that standard means, although it really... The philosophical concepts compared to the other concepts, we know all of that. So Dowdy, I think, does establish what the standard is that we have to apply here. It's not proximate cause. It's not predominant cause. It's substantial contribution. The question here in our case, I think, is, is this that special, unique case under the standard of review that we have of clearly erroneous, where the facts of this case require reversal? Well, no, Your Honor, but let me sort of talk about sort of the previous points you made. I mean, you know, I think Dowdy clearly introduced a causation element into the, you know, into the question of whether the substantial cause test is met. And as I think I put this in a footnote of my brief, I mean, there may not be a lot of daylight at this point between the California proximate cause test and the cause. And so the fact that both Dr. Galpin and Dr. Levin... test is the standard that we should employ on this federal ERISA case. Well, yes, I am saying that, Your Honor. Where do you get support for that? Well, I mean, you get support for that in that McClure was, when it was handed down, decided that the state common law with respect to interpretation of insurance policies would be preempted by ERISA and instead federal common law would govern. Now, four years later... Are you arguing now that federal common law does not govern this ERISA case? That is correct. Not with respect to state common law that addresses insurance policy interpretation. And what happened four years after McClure was handed down was the Ward case came along, and the Ward case actually involved a state common law, the notice prejudice rule of interpretation for insurance policies, and the Ward case held that that was saved from preemption. Now, at oral argument in Ward, and I was there, the insurance company lawyers, Mr. Chiata, who now sits on the First Circuit, made the argument that, well, wait a minute, okay, this is judge-made law, and the savings clause should not apply to judge-made law. And Justice Rehnquist answered, well, what business is it of ours whether the state makes its law via statute or administrators or judges? And that happens to be the law, as it was handed down in Ward, that, you know, there's no distinction between judge-made law and statutory law, directly contrary to McClure, and that was emphasized again in the Miller case. And so I submit to this court that neither McClure nor Evans, which hold that state laws interpreting insurance policies if they're judge-made laws are preempted and not saved by the saving clause, I submit that that's just no longer good law and that the proximate cost standard should govern. But regardless, as I pointed out earlier, in the Dowdy case, it clearly introduced elements of causation into the substantial contribution test, and so I'm not sure it really matters. Well, I'm not sure that really matters, because even if we look to your client's expert, which you just read from the report about the direct link between his accident at the hotel, two sentences later in a sentence he's got underscored and bolded, talks about the underlying diseases that he carried at that point, that's the predecessor, and plainly he's talking about diabetes among other things, enhance and amplify the odds of getting an infection as well as a more difficult task of controlling it. So if we have to go back to the first step, what really kicked this off? It seems to me Dr. Gilpin is saying, well, it's the diabetes he had at the beginning that led us to this road. So you can try to develop a test, which I don't think is the one that applies here. It says, well, let's look to the origin. But the origin, according to Dr. Gilpin, appears to be the diabetes. Well, I mean, you know, I mean, Your Honor, I think the initiating effect, I don't think that anybody. You're picking your spots, because Dr. Gilpin says enhancing the risk, the odds of getting an infection, that's something that existed at the time the foot stepped on the glass. So what came first, chicken or egg? In this case, what came first was the disease. Well, yeah, but that's the whole point of the substantial contribution test, is there's always a preexisting disease. That's true in all of these cases. There's not. I've cut my foot on glass and fortunately didn't have a preexisting disease that made it into the disaster that it was for Mr. Maurice. I did not, obviously did not say what I'm attempting to say correctly. This situation always arises in the context of a preexisting disease, because you've got the language of the policy, which was disapproved in Atkins and which was disapproved in McClure and Dowdy, that says the accident has got to be direct and independent. And what the Atkins court said, and this was accepted by McClure, is look, you'd have to be in perfect health. Under that language, you would have to be in perfect health if there was anything wrong with you at all at the time you got the injury. But it seemed to me you're trying to suggest to us the test should be what's the starting point. And I'm saying I don't think that's the test, but I'm also saying, but even factually, I don't think that gets you to where you want to go, because Dr. Gilpin suggests the starting point is the preexisting disease. But, you know, in all the AD&D approximate cause cases in California, I mean, there's always a preexisting illness that contributes to the loss. You know, the gentleman is infirm and lying in bed when the fire happens. And that's not the same in any place. It's only the very first disease that counts or very first step that counts. Well, it has to be something that triggers the accident, that triggers the injury. And I accept the fact that it is certainly complicated, Your Honor. But all these cases arise under the same basic fact pattern. Somebody has got an injury. They have an accident, which the impact of that accident is exasperated by the preexisting injury. And that's the reason for the substantial contribution test. And, well, I was going to reserve some time, but I guess I'm not. Any further questions? And otherwise, I'll submit, Your Honors. Thank you. Just for a few closing remarks, Your Honor. The state law test doesn't help. The trigger event was the diabetes. It was the WIC that initiated everything that happened, even if the glass cuts did happen. And there was no need to wade into the thicket of ERISA preemption to come to a decision on this case. The Miller case was decided in 2002. It was not a seat change for ERISA preemption. Cases after that, it's now been 17 years, nothing has changed. The standard remains the same. Courts like to use federal common law because that provides uniformity. One of the main principles of ERISA, one of the main objectives, is for uniformity, a plan and administration, and for claims decisions. If we were to adopt the state law, that would mean reaching out and interpreting the different laws of 50 states. And here, even now, both sides can't even agree on the California state law. So I would submit that the substantial contribution test applies and that the plaintiff hasn't met her burden under that test to show that judgment should be in her favor. Therefore, judgment should be reversed. Thank you. Thank you. The case has been submitted, and that concludes our sitting today, and we're adjourned. This court, for this session, stands adjourned.
judges: Clifton, Block, Lee